NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 4, 2020
Decided March 5, 2020

**Before**

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-3426

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 16-cr-10053-001 |
| CLIFTON ROBINSON, <br> *Defendant-Appellant*. | Michael M. Mihm, <br> *Judge*. |

**O R D E R**

At a bench trial, the district court found Clifton Robinson guilty of sixteen fraud-related counts: conspiracy to defraud the government, 18 U.S.C. § 286, eight counts of wire fraud, *id*. § 1343, five counts of mail fraud, *id*. § 1341, and two counts of aggravated identity theft, *id*. § 1028A(a)(1). The court sentenced Robinson to 99 months in prison (63 concurrent months for Counts 1 through 14, and 24 months on Counts 15 and 16, with 36 of those months to run consecutively to the 63-month sentence) followed by three years' supervised release. The court also ordered him to pay $1.2 million in restitution. Robinson filed a notice of appeal, but his appointed counsel asserts that the appeal is frivolous and moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Robinson opposes counsel's motion. *See* CIR. R. 51(b). Counsel's brief explains

the nature of the case and addresses potential issues that this kind of appeal might involve. Because the analysis appears thorough, we limit our review to the subjects that she discusses and those in Robinson's response. *United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014).

The government introduced evidence that, between 2012 and 2016, Robinson schemed to file over 300 fraudulent tax returns, claiming a total of more than $1.8 million in refunds—about $1.2 million of which was distributed before the scheme was uncovered. The record—which included text messages, other documents, and the testimony of 21 witnesses—showed that Robinson's role in the scheme was to collect social security numbers and birth dates (sometimes with, often without, the person's permission) and then provide that information to one of his co-defendants, Velma Robertson. She would then use that information to file false tax returns. Evidence also showed that Robinson was involved in the receipt and distribution of the refunds that the fraudulent returns generated.

Counsel first considers whether Robinson could contest the admission of evidence at trial, but appropriately concludes that a challenge on this ground would be frivolous. We would review the court's evidentiary rulings for abuse of discretion and would reverse only if "the record contains no evidence on which the district court rationally could have based its ruling." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010).

Robinson raised a hearsay objection to one witness's testimony regarding an alleged statement from Robinson's daughter. In the statement, the daughter asked for the witness's identifying information so that her dad could claim the witness as a dependent on his tax return. The district court admitted the statement under Federal Rule of Evidence 801(d)(2)(E), which allows statements made by a co-conspirator in furtherance of the conspiracy. *See United States v. Quiroz*, 874 F.3d 562, 570 (7th Cir. 2017). Robinson argued that no evidence suggested that his daughter was a co-conspirator (she was not indicted). But the district court ruled that the preponderance of the evidence—testimony from those involved in the conspiracy and the daughter's alleged statement—showed that she was part of the conspiracy. It would be frivolous to argue that this finding was clearly erroneous, *see id.*, so counsel rightly concludes that it would be useless to contend that the court abused its discretion in overruling the hearsay objection.

Robinson also objected to the admission of a spreadsheet as a business record. The document summarized the deposit of tax-refund checks into his bank accounts and the bank accounts of his co-conspirators. Under Federal Rule of Evidence 1006, a summary of records is admissible if "the underlying records are accurate and would be admissible as evidence." *United States v. Oros*, 578 F.3d 703, 708 (7th Cir. 2009). The court admitted the underlying bank records into evidence after the government established their accuracy and after Robinson's counsel affirmed that he had no objection. So, a contention that the court abused its discretion by allowing the summary of those records would be pointless. (Robinson's counsel affirmatively stated that he had no objection to every other exhibit offered, so Robinson has waived any other potential error. *See United States v. Schalk*, 515 F.3d 768, 774 (7th Cir. 2008).)

Next, counsel evaluates whether Robinson might argue that the government's evidence was insufficient to sustain his convictions. But counsel properly concludes that the evidence, viewed in the light most favorable to the government, would enable a rational trier of fact to find "the essential elements of the crime[s] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Dingle*, 862 F.3d 607, 614 (7th Cir. 2017). The evidence of Robinson's conspiracy to defraud the government, *see* 18 U.S.C. § 286, was overwhelming. Velma Robertson's testimony of the inner workings of the conspiracy and Robinson's role in it easily supports his conviction. *See, e.g.*, *United States v. Elder*, 840 F.3d 455, 460 (7th Cir. 2016) (co-conspirator testimony about defendant's role in conspiracy supported a conviction for conspiracy). Many others who were complicit in the scheme, but were not charged, also testified to Robinson's role in filing the fraudulent tax returns. And Robinson's own text messages implicated him in the conspiracy and substantiated the witness testimony.

As counsel points out, the record also contained ample evidence to find Robinson guilty of wire fraud and mail fraud. The testimony of IRS investigators and co-conspirators, documentary evidence, and text messages connected the fraudulent tax returns to the wire-fraud and mail-fraud counts. And the parties stipulated at trial that the scheme involved "wire communications affecting interstate commerce" and that the "information and matter at issue was delivered by mail," thus supporting Robinson's convictions under 18 U.S.C. § 1343 and § 1341. In his Rule 51(b) response, Robinson argues that the government offered no evidence of an interstate nexus as required for a wire-fraud conviction under § 1343. But the stipulation says otherwise. Although Robinson contends that the stipulation was made over his objection at trial, he is wrong.

The district court explicitly asked Robinson on the first day of trial whether he agreed to the stipulation, and he (not his counsel) said that he did.

As for the aggravated identity-theft offenses, a challenge to the sufficiency of the evidence likewise would be futile. Both victims testified that they did not give Robinson permission to use their (or their children's) identity information to file tax returns on their behalf. The district court found this testimony credible and ruled that Robinson was guilty under 18 U.S.C. § 1028A(a)(1). Credibility determinations are within the province of the finder of fact and will be reversed only if the "credited testimony is internally inconsistent, implausible, or contradicted by extrinsic evidence," none of which is true here. *Blake v. United States*, 814 F.3d 851, 855 (7th Cir. 2016). At trial, the victims' testimony was corroborated by bank statements, text messages, and a spreadsheet showing that Robinson stole their identity information to file fraudulent tax returns.

Finally, counsel correctly concludes that a challenge to Robinson's sentence would be fruitless. Counsel considers arguing that Robinson should not have been assessed three points for his earlier conviction of aggravated criminal sexual assault, *see* U.S.S.G. § 4A1.2(d)(1), which resulted in a criminal history category of II. But the sentence on that conviction ended in 2000, and Robinson was convicted here of conduct that began in 2012, so the overlap between the two falls within the 15-year period specified in the guidelines for the additional three points. *See* U.S.S.G. § 4A1.2(e)(1). Therefore, it would be frivolous to argue that the district court procedurally erred in calculating a guidelines range of 51 to 63 months on the first 14 counts based on a criminal history category of II and an offense level of 23 (a base level offense level of 7 plus a 16-level enhancement for an intended loss of more than $1,500,000). *See* U.S.S.G. §§ 2B1.1(a)(1), 2B1.1(b)(1)(I), 3D1.2(d). And for Counts 15 and 16, the court correctly accounted for the statutorily required 24-month consecutive sentence for aggravated identity theft. *See* 18 U.S.C. § 1028A(a)(1); U.S.S.G. § 2B1.6(a).

Counsel also considers whether Robinson could challenge his sentence as substantively unreasonable but properly concludes that he could not. Robinson's sentence is within the applicable guidelines range, so we would presume it to be reasonable. *United States v. Cunningham*, 883 F.3d 690, 701 (7th Cir. 2018). Nothing in the record rebuts that presumption. The transcript from Robinson's sentencing hearing shows that the court permissibly weighed the required factors under 18 U.S.C. § 3553(a). The court reasonably deemed the offense serious, noting the magnitude of the

conspiracy, which put "at risk the entire system of people claiming what they're entitled to receive as refunds." *See* 18 U.S.C. § 3553(a)(1), (2). The court also reasonably wanted to deter such conduct and highlighted Robinson's lack of remorse. *See id*.

In his Rule 51(b) response, Robinson broadly asserts that his appointed attorney was ineffective. But we repeatedly have observed that a challenge to the adequacy of counsel's performance is best pursued through a motion under 28 U.S.C. § 2255 so that a more complete record can be made. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014). Robinson also contends that his attorney for this appeal was ineffective because she failed to raise an ineffective-assistance argument on his behalf. But heeding this court's advice to save that claim for collateral review does not make appellate counsel ineffective.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS Robinson's appeal.